UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MUNIN KATHAWA,

       Plaintiff,                                    Case No. 18-13026

vs.                                                 HON. MARK A. GOLDSMITH

BRIAN FRIEDMAN, et al.,

       Defendants.
_____/

## OPINION & ORDER
## DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 20)

Plaintiff Munin Kathawa is a Michigan prisoner incarcerated at the G. Robert Cotton Correctional Facility ("JCF"). Kathawa worked as a tutor in non-party Laura Bendele's classroom until concerns about Kathawa and Bendele were brought to Defendant Principal Brian Friedman's attention. Friedman reassigned Kathawa to Defendant Spencer Kinney's classroom. Shortly thereafter, Kathawa complained to Friedman about the learning environment in Kinney's classroom and made allegations to others that Kinney was helping students cheat on the GED exams. Friedman convinced Defendant Stacey Purdy, the Classification Director, to terminate Kathawa from his tutoring position because of safety concerns related to Bendele. When Kathawa filed grievances with Defendant Mindy Hill,[1] the Special Acts Director, Hill recommended Kathawa be disciplined for his unfounded allegations of staff misconduct, and Kathawa was later transferred out of JCF.

---

[1] Formerly Mindy Wallace.

Kathawa filed this action alleging that Defendants retaliated against him in violation of his First Amendment rights. Defendants have moved for summary judgment. The matter is fully briefed. For the reasons discussed below, the motion is denied.

## I. BACKGROUND

Kathawa is a prisoner at JCF, where he worked as a tutor in the GED program. Defendants' Statement of Material Facts ("DSMF") ¶¶ 1, 4, 8 (Dkt. 20). From July 2016 to September 2017, he worked as a tutor in Bendele's classroom. Id. ¶ 8. Many of Bendele's students have learning disabilities and struggle to pass the GED exams. See Kathawa Letter, Ex. J to Defs. Mot. for Summ. J. (Dkt. 20-11). Kathawa was passionate about tutoring students, Kathawa Dep., Ex. 1 to Resp., at 30 (Dkt. 21-1); Friedman Dep., Ex. A to Defs. Mot., at 91 (Dkt. 20-2), and he would often spend his free time tutoring students in the housing units, see Kathawa Letter. By all accounts, Kathawa was an excellent tutor. DSMF ¶ 17.

In September 2017, after receiving a report on concerns regarding Kathawa and Bendele, Friedman reassigned all of the tutors to different classrooms. Id. ¶ 9. Kathawa was reassigned to work in Defendant Kinney's classroom. Id. ¶ 4. After Kathawa's transfer to Kinney's classroom, Friedman began receiving notes from other prisoners, colloquially referred to as "kites," requesting that Kathawa be transferred back to Bendele's classroom. DSMF ¶ 11; see also Friedman Dep. at 40-41.

Shortly after the transfer to Kinney's classroom, Kathawa was asked to tutor a prisoner who was scheduled to go home in late November. Kathawa Dep. at 132. Kathawa helped prepare the student for the GED exam, and Kathawa believed that the student could pass the exam with the minimum passing score of 145 or perhaps with a score as high as 149. Id. To Kathawa's surprise, the prisoner passed the exam with a score of 169. Id. Kathawa asked the prisoner about

the exam, and based on the conversation, Kathawa soon realized that his student could not have fairly passed the exam with such a high score. Id. After further inquiry, the prisoner revealed that Kinney, among others, provided him with the exam answers. Id. at 96. Kathawa documented eight other instances of cheating and he suspected that the number was likely higher and growing. See Jan. 2018 Letters, Ex. 12 to Resp. (Dkt. 21-12).

Kathawa made three verbal complaints to Friedman regarding the shortcomings of JCF's GED program in December 2017 and January 2018. Kathawa Dep. at 19-20. Kathawa complained that the GED program was geared more toward testing than teaching. Id. at 27. He told Friedman that the classes were regularly dismissed early, students were playing video games in Kinney's classroom, and that the environment was not conducive to learning. Id. at 27, 30. It is not clear from the record whether Kathawa raised the issue of cheating with Friedman. Id. at 96; see also January 2018 Letters. However, Kathawa did raise the cheating issue in letters that he sent to his nephew, Father Anthony Kathawa, and his Congressman, Klint Kesto. Id. at 96; January 2018 Letters.

According to Defendants, during a school staff meeting held in February 2018, the topic of "overfamiliarity" between Kathawa and Bendele was discussed. DSMF ¶ 10. Based on this discussion at the school meeting, and the kites from other prisoners seeking Kathawa's return to Bendele's classroom, Friedman informed the school officers that Kathawa should have no contact with Bendele. Id. ¶ 12. Kathawa subsequently received a misconduct report for being outside of Bendele's door without a supervisor's permission. Misconduct Report, Ex. K to Defs. Mot. (Dkt. 20-12). Friedman does not recall whether Kathawa was ever informed that he was to refrain from interacting with Bendele, Friedman Dep. at 40, and it was not unusual for students to wander around the school building, Kinney Dep., Ex. 3 to Resp., at 28-29 (Dkt. 21-3). The misconduct

report was later dismissed because the review of the misconduct report was not handled properly. Misconduct Mem., Ex. L to Defs. Mot. (Dkt. 20-13).

Kathawa sent a letter to Friedman requesting a transfer from Kinney's classroom back to Bendele's classroom. Feb. 2018 Letter, Ex. J. to Defs. Mot. (Dkt. 20-11). In the letter, Kathawa noted that other prisoners had sent reports to Friedman expressing how much they benefitted from Kathawa's tutoring. Id. Friedman wrote on the letter that there had been seven to ten requests by other students, and that he spoke with a deputy officer about the requests. Id. Friedman denied Kathawa's request to transfer. Id.

Friedman testified that he had grown concerned by Kathawa's letter, and the possibility that he was manipulating other prisoners to write letters on his behalf. DSMF ¶ 15; Friedman Dep. at 89. On March 1, 2018, Friedman brought his concerns to Deputy Warden Douglas Smith, who concluded that the situation was not "normal . . . prisoner behavior." DSMF ¶ 15. Friedman testified that he had lost sleep over the matter. Friedman Dep. at 90-91. After his conversation with Smith, Friedman immediately sent an email to Defendant Purdy requesting that Kathawa be removed from his position as a tutor because of the safety and security concerns related to Bendele. DSMF ¶ 16. On March 13, 2018, two Prisoner Program and Work Assignment Evaluation (also known as "Classification Reports" or "363's") were drafted by Purdy, and perhaps Kinney. The nearly identical Classification Reports state the following:

> KATHAWA . . . was a tutor in the 300 bldg. for rm. 223 Mr. Kinney. KATHAWA was written an OOP ticket because he left rm. 223 and went to rm. 214 Ms. Bendele's class which he did every time he got a chance. The ticket was thrown out for a clerical error. Ms. Bendele has expressed a feeling for her safety when he comes to her room. As Classification Director of JCF I will NOT let KATHAWA return to the tutor position he held. KATHAWA is being terminated for the safety and/or security of the facility. . . .
>
> If the prisoner is not found guilty at the initial hearing, he shall be paid for any time he was removed from the assignment pending the hearing. The prisoner may be

returned to the same assignment or considered for reclassification in accordance with [prison policy], as determined by the Classification Director. THE PRISONER SHALL NOT BE RETURNED TO THE SAME ASSIGNMENT IF THE CD DETERMINES IT TO BE A THREAT TO THE SAFETY OR SECURITY OF THE FACILITY.

Classification Reports, Ex. 9 to Resp. (Dkt. 21-17). Friedman, Kinney, and Purdy all signed the Classification Reports. Id. Kathawa was removed from his tutor position that same day. DSMF ¶ 19.

Kathawa immediately filed a grievance complaining that he had been removed from his tutoring position arbitrarily. 3/14/2018 Grievance, Ex. H to Defs. Mot. (Dkt. 20-9). He argued that because he had been exonerated of any wrongdoing related to the misconduct report, under prison policy, he should have been returned to his tutoring assignment and received backpay. Id. Kathawa also expressed his belief that he was being subjected to retaliation, and he requested that JCF staff monitor for other potential retaliatory actions, such as transfer out of JCF. Id.

On March 21, Hill met with both Kathawa and Bendele. 3/28/2018 Grievance, Ex. I to Defs. Mot. (Dkt. 20-10); Hill Dep. at 44. Hill says that Kathawa took issue with the Classification Reports and asked for written proof that Bendele had expressed concerns for her safety. See 3/14/2018 Grievance. According to Hill, Bendele told Hill that she felt threatened around Kathawa. Hill Dep. at 44. On that same day, Hill resolved Kathawa's grievance partially in his favor, and directed him to be paid for the time he was laid off pending the misconduct hearing, but Hill denied Kathawa's request to return to his tutor position because Bendele had expressed "bad feelings" around Kathawa. 3/14/2018 Grievance.

Kathawa filed a second grievance on March 28. 3/28/2018 Grievance, Ex. I to Defs. Mot. (Dkt. 20-10). Kathawa accused Purdy, Smith, Kinney, and Friedman of falsifying the Classification Reports and conspiring to retaliate against him. Id. Kathawa was transferred out of

5

JCF that same day. Transfer Order, Ex. O to Defs. Mot. (Dkt. 20-16). He was later returned to JCF because he was in a college program and should not have been transferred in the first place. Second Transfer Order, Ex. P to Defs. Mot. (Dkt. 20-17).

Hill denied Kathawa's second grievance, in part, by focusing on Kathawa's representation that he had just received copies of the Classification Reports. 3/28/2018 Grievance. Kathawa had the reports in hand when he spoke with Hill on March 21. See 3/14/2018 Grievance ("Prisoner states 'I'm standing on the merits of grievance[. Y]ou claim Ms. Bendele made comments to staff, has she written a statement[?] Because someone has paraphrased her words on this 363. Are there any other statements that anyone has made regarding this issue?"). Hill concluded that Kathawa's previous grievance was unfounded. Id. She requested that a "Misconduct for Interference with Administration of Rules" be issued, because Kathawa "intentionally filed [a] grievance . . . which was investigated and determined to be unfounded, [which,] if proven true, may have caused multiple employees to be disciplined or receive[] corrective action." Id.

Bendele tells a very different story.

Bendele testified that she has never expressed any concerns for her safety with respect to Kathawa. Bendele Dep., Ex. 2 to Resp., at 8 ( Dkt. 21-2). According to Bendele, Hill called her about a grievance, which Bendele had not seen. Id. at 11. Bendele testified to the following:

> I've never had a conversation with Ms. [Hill] regarding Kathawa except the day that she called me and asked me—she told me she was reading a document from a grievance and that she understood I felt uncomfortable in his presence, and I indicated, no, that's not the case.

Id. at 12. Bendele said that Hill "seemed a little surprised and repeated what [Bendele] said before [concluding] the phone call." Id. at 15.

Bendele testified that on April 4, 2018, she "was again taken into Deputy Smith's office, this time with [her] immediate supervisor Mr. Friedman." Id. at 16. Bendele had been

6

"interrogated by Deputy Smith without any other staff people present on two other occasions." Id. Bendele described the meeting in the following way:

> Deputy Smith had a much calmer demeanor about him when he was in the presence of another staff person, but I was still intimidated. They went over concerns about Kathawa. I again asked if there was an investigation. Deputy Smith indicated he'd never do that to me. It was an issue of my safety. They used intimidation tactics as they brought up . . . other civilian female staff that had been stalked, raped, and/or murdered by inmates. It is very intimidating being talked to in this manner by two men behind closed door.
> . . .
> I felt ganged up on and that I was made to look weak and stupid. When staff have concerns, I don't disregard those concerns. I take them seriously. We've been trained to always be cautious and not trusting of an inmate. I would never completely disregard and think that they were off base. So I take people's opinions and their perception very seriously. I was told to write up a summation of the entire conversation and submit it. I did that the same day. At the end of the day I submitted my summation of the conversation that we had and submitted it before I left work on that day.

Id. at 16-17. In her summation, Bendele recounted that she was "told that if Kathawa got his job back due to 'wrongful termination' that [she] would be transferred from JCF." Id. at 17. Bendele said that Smith and Friedman told her that their concerns for her safety had turned into "a stalking concern" and that she was to hit her personal protective device if she even saw Kathawa. Id. at 19.

Subsequently, Bendele was given a split schedule between JCF and another facility. Id. at 20. Bendele believes that she was given the split schedule because she would not corroborate Friedman and Smith's false narrative that Kathawa intimidated her in some fashion. Id. She testified that all of the alleged misconduct occurred after Kathawa made his written and verbal complaints about the GED program under Kinney. Id. at 21.

Kathawa filed a complaint against Defendants alleging that rather than terminating him because Bendele had expressed safety concerns, his termination was retaliation for criticizing the

7

GED program in violation of his First Amendment right to free speech. Defendants moved for summary judgment.

## II. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." Horton v. Potter, 369 F.3d 906, 909 (6th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

## III. ANALYSIS

Defendants make four arguments in support of their motion for summary judgment: (i) they argue that Kathawa can show nothing more than temporal proximity from his complaints about the GED program to the adverse actions taken against him; (ii) they argue that Kinney, Hill, and Purdy had no actual knowledge of Kathawa's protected conduct, and that they were not the decisionmakers who removed him from his position as a tutor; (iii) Defendants argue that they each had a nonretaliatory reason for taking potentially adverse actions against Kathawa; and (iv) they argue that they are entitled to qualified immunity. The arguments will be taken in turn.

## A. First Amendment Retaliation

Kathawa brings his First Amendment retaliation claim under 42 U.S.C. § 1983, which allows plaintiffs to bring actions against state actors for constitutional violations. Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must show "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Id. at 394. Defendants, for the purposes of this motion, are not disputing that Kathawa has established the first two elements. Defs. Mot. at 13 n.1. However, they dispute that there is a causal connection between the first and second elements.

### 1. Causation

Defendants argue that Kathawa cannot demonstrate that his protected activity was a motivating factor in his termination by temporal proximity alone. Defs. Mot. at 14. "A 'motivating factor,' . . . is one without which the action being challenged simply would not have been taken." Greene v. Barber, 310 F.3d 889, 897 (6th Cir. 2002). Defendants' argument misses the mark.

Retaliatory intent is rarely supported by direct evidence and, therefore, proof of a defendant's intent seldom lends itself to summary judgment. Bloch v. Ribar, 156 F.3d 673, 682 (6th Cir. 1998). Plaintiffs must often rely on circumstantial evidence to provide the evidence of retaliatory intent necessary to survive summary judgment. Holzemer v. City of Memphis, 621 F.3d 512, 526 (6th Cir. 2010). In First Amendment retaliation cases, extremely close temporal proximity can raise an inference of retaliatory intent, but to support such an inference typically additional evidence is required. Id.

Kathawa has supplied enough evidence in addition to the temporal proximity of Defendants' adverse actions to his protected conduct to survive summary judgment. Kathawa began making verbal complaints to Friedman in December 2017 and continued through late January 2018. In January, Kathawa also sent letters accusing JCF teachers of providing students with answers to the GED exam. In February, Friedman ordered that Kathawa was to have no contact with Bendele without informing Kathawa of that decision. The following month, Friedman, Kinney, and Purdy took the position that Kathawa was a danger to Bendele based on statements that each Defendant says Bendele made to them personally or that they heard Bendele make at staff meetings. Friedman Dep. at 40, 52; Kinney Dep. at 74; Purdy Dep., Ex. 6 to Resp., at 14 (Dkt. 21-6). However, Bendele denies ever making such statements.

Kathawa was terminated from his position as a tutor in March 2018. Taking the facts in the light most favorable to Kathawa, when he filed a grievance on the matter, Hill reported falsely that Bendele had told her that she had "bad feelings" around Kathawa. When Kathawa filed his second grievance, he was transferred to another facility, and Hill recommended further discipline for filing an unfounded grievance. Based on Bendele's testimony, however, the grievances appear to have been well founded.

In April, Smith and Friedman intimidated Bendele in an attempt to support their false narrative about Kathawa. They told her that if Kathawa was returned to his tutoring position, she would be transferred out of JCF. When she refused to substantiate their false narrative, Friedman changed Bendele's work schedule, which Bendele testified would not have happened if she had lied about her interactions with Kathawa.

The temporal proximity of Kathawa's protected conduct to the adverse actions taken against him, and the substantial circumstantial evidence is more than enough to raise an inference of retaliatory intent in this case.

### 2. Actual Knowledge

Defendants argue that Purdy, Kinney, and Hill did not have actual knowledge of Kathawa's complaints about the GED program. Defs. Mot. at 16. The record does not show conclusively that these Defendants had actual knowledge of Kathawa's complaints. But taking the facts in the light most favorable to Kathawa, there is enough circumstantial evidence to support the inference that they knew of either Kathawa's complaints about the GED program or Kathawa's other statements.

There is no dispute that Kathawa was an excellent tutor. Nonetheless, he was removed from his position. The parties have presented two plausible theories for the actions taken against Kathawa. Defendants either acted to ensure Bendele's safety, or Defendants retaliated against Kathawa for his comments to staff and others; both theories find support in the record. The issue is, therefore, fact bound. Under Kathawa's version of events, Purdy and Kinney signed 363 forms that advanced a known false narrative to justify terminating his tutor position. Similarly, Hill knowingly advanced the same false narrative that Kathawa was a threat to Bendele. A jury could reasonably infer that Kathawa was terminated as retaliation for making comments about the GED program and other matters.[2]

---

[2] Defendants also argue that because Kinney was not the ultimate decision-maker with respect to removing Kathawa from his tutoring position, he should be granted summary judgment. Defs. Mot. at 3. Similarly, Defendants contend that none of them had the decision-making authority to transfer Kathawa out of JCF. Id. at 17 n.3. These arguments are without merit. As Kathawa points out, Defendants do not need to be "the immediate trigger" for his injury, so long as Defendants should have reasonably foreseen that their false statements would lead to the adverse actions taken against Kathawa. See Powers v. Hamilton Cty. Pub. Def. Comm'n, 501 F.3d 592,

### 3. Non-retaliatory reasons

Finally, Defendants argue that they each had a nonretaliatory basis for any potentially adverse action suffered by Kathawa. "If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." Thaddeus-X, 175 F.3d at 399. But Defendants have not shown that they would have terminated Kathawa's position or taken other actions against him if not for Bendele's statements, which she says she never made. Bendele's alleged statements related to her safety are the only reason offered for taking actions against Kathawa. Defendants have done nothing more than deny the veracity of Bendele's testimony. Such a denial is not enough to meet Defendants' burden to show affirmatively that there is no genuine issue of material fact. Id.

Defendants' motion for summary judgment is denied on Kathawa's First Amendment claim.

### B. Qualified Immunity

Defendants also raised the defense of qualified immunity. Defs. Mot. at 23. Once a defendant raises a qualified immunity defense, the plaintiff bears the burden of demonstrating that it does not apply. Rodriguez v. Passinault, 637 F.3d 675, 689 (6th Cir. 2011). To defeat a defense of qualified immunity, the plaintiff must satisfy the following two-part test: (i) the defendant violated a constitutional right, and (ii) the right at issue was "clearly established" at the time of the misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001) (overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)). While the Court in Saucier mandated that the two steps be addressed

---

609 (6th Cir. 2007). Termination and transfers are adverse actions that are reasonably foreseeable consequences when security concerns are raised in the prison context.

in order, the Court in Pearson held that courts have discretion regarding which step to address first. Pearson, 555 U.S. at 236.

For the reasons discussed above, Kathawa has met his burden of demonstrating that he was retaliated against for his comments made with regard to the GED program, reassignment to Bendele's classroom, and accusations against Defendants for advancing a false narrative. And it was clearly established at the time actions were taken against Kathawa that the First Amendment bars retaliation for protected speech. See, e.g., Crawford-El v. Britton, 523 U.S. 574, 592 (1998). Accordingly, Defendants are not entitled to qualified immunity.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motion for summary judgment (Dkt. 20) is denied.

SO ORDERED.

Dated: January 6, 2020         s/Mark A. Goldsmith
   Detroit, Michigan        MARK A. GOLDSMITH
                         United States District Judge